UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| VIEW OUTDOOR ADVERTISING, LLC | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 2:13 CV 219-PPS |
| | ) |
| TOWN OF SCHERERVILLE BOARD OF | ) |
| ZONING APPEALS, et al., | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

View Outdoor Advertising wants to erect a billboard in the Town of Schererville, but has been blocked from doing so by a relatively new ordinance prohibiting all billboards. View claims this ordinance violates its free speech rights, that it did not receive proper due process regarding its request for a variance, and that the Defendants' decision to deny the variance was arbitrary and capricious. The Defendants are the Town of Schererville, its Board of Zoning Appeals, and a number of individuals, but for convenience sake I will refer to them collectively as "the Town." The Town has moved for summary judgment on all three claims. Because the ordinance in question directly advances the Town's interests in aesthetics, and for other reasons discussed below, the Town's motion for summary judgment will be **GRANTED-IN-PART.** View's federal claims will be **DISMISSED**. But View's remaining state law claims will be **REMANDED** to the Lake Superior Court.

**Background**

In early 2011, View contracted with the owner of a parcel of land in Schererville

to erect a billboard on the property. (DE 35, Ex. 1 at ¶ 8) That parcel is located near the very busy intersection of U.S. Route 41 and U.S. Highway 30. (*Id*. at ¶ 5)  At the time of View's contract, the parcel contained two billboards owned by Lamar Advertising, but Lamar's billboard leases were set to expire soon. (*Id*. at ¶ 8)  Once the leases expired, Lamar removed its billboards from the land and shortly thereafter, View applied for a building permit to erect a single, new billboard on the parcel. (*Id*. at ¶¶ 9, 11)

The Town denied View's application because the proposed billboard would be within 200 feet of two existing vacant buildings, which violated the Town's then-existing ordinance. (*Id*. at ¶ 12) In response, View had the buildings demolished, at a cost of approximately $21,900. (*Id*. at ¶ 14)  After the demolition, instead of issuing the permit, the Town then informed View that the parcel's zoning prohibited any billboards from being built on the property. (*Id*. at ¶ 15)  The parcel was zoned C-3 PUD, and billboards could be erected only on parcels zoned C-3 (but not C-3 PUD). (*Id*.)  The permit application was therefore again denied. (*Id*.)

Over the next year or so, View went through the process of getting the land rezoned to allow it to erect the billboard. (DE 36 at 3-4)  Despite various delays by the Town, View was ultimately successful in getting the parcel rezoned.  But it still needed a permit to erect the billboard.  In February 2012, View applied for its building permit, but was then informed that a new ordinance had been passed prohibiting all new advertising billboards anywhere in the Town of Schererville. (DE 35, Ex. 1 at ¶ 26) Unbeknownst to View, that ordinance became effective on January 1, 2012. (*Id*. at ¶¶ 26-28)  So the work that View did in attempting to erect the billboard — including

demolishing two buildings at a substantial cost — was all for naught. The new ordinance superseded one that was enacted in the late 1980's. Under the prior ordinance, billboards were prohibited everywhere in the Town except in the Route 41/Route 30 corridor. Under the new ordinance, billboards are prohibited everywhere in town, but existing billboards — those erected under the earlier ordinance — may remain in place; they're grandfathered in.

The ordinance states that it is "intended to improve aesthetics and preserve the quality of life in the Town by eliminating signage that is incompatible within individual Zoning Districts." (DE 28-1 at 43). According to the Town, there was overwhelming support from the public to ban billboards because they are unattractive and distracting. The new ordinance specifically prohibits "Billboards, outdoor advertising structures, and similar free standing signage." (*Id*. at 47, ¶ O)

During the next year, View went through the process of appealing the denial of its permit. (DE 36 at 4-5) After receiving its final denial, View then filed a Petition for Variance of Use with the Schererville Board of Zoning Appeals (BZA). (*Id*. at 5) The next step in the process to obtain a variance is presenting evidence to the BZA, who then submits a recommendation to the Town Council on whether the variance should be granted. The BZA held a hearing on View's request. (*Id*.) At the hearing, counsel for View presented evidence and argument, and engaged in an extensive back-and-forth discussion with the BZA. (*See generally* DE 35, Ex. 2 at 15-26) The history of View's difficulties with obtaining its needed zoning and permits was discussed at the hearing, and due to this long history, BZA Chairman William Jarvis suggested that the matter be

continued for thirty days. (*Id.* at 21) Board member Robert Pharazyn disagreed that any additional time was needed and moved for an unfavorable recommendation to the Town Council. (*Id.*) Before voting on the motion, the BZA discussed the fact that the Indiana Code lists five factors that a petitioner must meet in order to be granted a variance. (*Id.* at 21-22) Mr. Pharazyn based his motion on the fact that View's request was not in compliance with the comprehensive plan of the Town of Schererville — which is one of the five factors. (*Id.* at 22) Pharazyn's motion was brought to a vote of the BZA and passed unanimously. (*Id.* at 23)

From there, it was on to the Town Council. Normally, View had received notice of any public meetings or hearings regarding its various requests. (DE 35, Ex. 1 at 45) That appears to be the Town's general practice. This time, however, View did not receive any notice of the April 24, 2013 Town Council meeting— a fact the parties do not dispute. (*Id.* at ¶ 46; DE 28 at 5) The meeting therefore proceeded without View, and the BZA's recommendation to deny the variance was upheld without the Council hearing any additional argument or taking additional evidence. (DE 28 at 5)

About a month later, View filed this case in state court. In its initial filing, which View called a "Verified Petition for Judicial Review," View sought relief from the state court under the provision of state law — in particular, I.C. § 36-7-4-1003 — that allows for judicial review of decisions of boards of zoning appeal. (DE 1) But because the Petition is also peppered with claims arising out of the United States Constitution, the Town timely removed the case to federal court. (DE 2)

In the meantime, View learned that the BZA approved a variance for Lamar

4

Advertising Company — one of View's competitors — for a billboard blocks away from the real estate parcel where View's proposed billboard was contemplated. (DE 36 at 7-8) The Town claims that variance was granted because Lamar agreed to take down three billboards and maintain certain easements. (DE 39 at 2) Counsel for View attended Lamar's hearing before the BZA. (*Id.*)

View claims that the ordinance violates its First Amendment right to commercial speech by banning all billboards. View further claims that its due process rights were violated when it did not receive notice of the meeting before the Council. And finally, View Claims that the BZA and Council's actions were arbitrary and capricious. The Town now seeks summary judgment.

## Discussion

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine dispute about a material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

*First Amendment Claim (Count I)*

View makes a First Amendment challenge to the constitutionality of Section 4(O) of the Ordinance, which prohibits all "[b]illboards, outdoor advertising structures, and similar free standing signage." (DE 28-1 at 47) According to View, this prohibition infringes its commercial free speech rights under the First Amendment.

5

Billboards are large, immobile structures generally subject to regulation. *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 502 (1981).[1] As such, the government has a legitimate interest in controlling the noncommunicative aspects of the medium. *Id*. Yet, because the regulations of the noncommunicative aspects of a billboard run the risk of impinging on the communicative aspects protected by the First Amendment, the government must balance that interest with First Amendment considerations. *Id*. As the parties point out, that means applying the four-part test set forth by the Supreme Court in *Central Hudson Gas & Elec. Corp.*, 447 U.S. 557 (1980), which was reiterated in *Metromedia*:

> (1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective.

*Metromedia*, 453 U.S. at 507. As this quote makes clear, these factors are used to evaluate commercial speech. The parties don't actually address whether the ordinance is geared towards commercial or noncommercial speech (or both). In general, commercial speech is weighed less favorably than non-commercial speech. *Id*. at 505-06.

The ordinance in this case bans all billboards, presumably irrespective of content.

---

[1] *Metromedia* has been the subject of confusion for some time. The plurality first found that an ordinance banning billboards did not violate the plaintiff's right to commercial speech under the First Amendment because, under the *Central Hudson* factors, aesthetics and traffic safety were legitimate concerns that the ordinance was narrowly tailored to achieve. Ultimately, however, the Court invalidated the ordinance because the ordinance drew content-based distinctions between permitted and forbidden billboards. That, the Court found, was an impermissible infringement on *non-commercial* speech. That second issue, however, is not present in the matter at hand, so I cite to *Metromedia* only for its reasoning regarding billboards and commercial speech.

Since View does not allege that the ordinance is content-based, nor does it allege any of its noncommercial speech would be restricted, I will assume, as do the parties, that only commercial speech is at issue and therefore that *Central Hudson* applies.

The parties agree that the first two factors are not at issue because View's proposed billboards would not contain any unlawful speech and the government has a substantial interest in aesthetics. (DE 36 at 11) So this dispute really comes down to whether the Town's ordinance directly advances its stated interest in improving the Town's aesthetics, and if so, whether it is narrowly tailored to do so. View argues that the Town is required to present evidence that the ordinance will actually improve the aesthetics of the Town. But when the interest at stake is something as subjective as aesthetics, "detailed proof" is unnecessary. *Ackerley Comm. of the Northwest Inc. v. R.F. Krochalis*, 108 F.3d 1095, 1099-1100 (9th Cir. 1997). As the Court stated in *Metromedia*, "It is not speculative to recognize that billboards by their very nature, wherever located and however constructed, can be perceived as an 'esthetic harm.'" *Metromedia*, 453 U.S. at 510. That concept was specifically affirmed a few years later when the Supreme Court held that visual clutter is an adequate reason to completely ban the posting of signs on public property. *Members of the City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 807 (1984). I therefore find that there is no doubt that this ordinance fulfills its stated goal of improving the aesthetics of the Town.

I likewise believe that the ordinance is narrowly tailored to achieve its stated goal. As the Court in *Metromedia* stated, "If the city has a sufficient basis for believing that billboards . . . are unattractive, then obviously the most direct and perhaps the only

7

effective approach to solving the problems they create is to prohibit them. The city has gone no further than necessary in seeking to meet its end." *Metromedia*, 453 U.S. at 508. Admittedly, *Metromedia* did not involve a complete ban on billboards and the ordinance was ultimately invalidated for other reasons (as discussed in footnote 1 above), but just a few years later, the Court upheld an ordinance banning all signs posted on public property because they constituted visual clutter, as I have already noted. *Members of the City Council of Los Angeles,* 466 U.S. at 808. Specifically, the Court found that "[b]y banning these signs, the City did no more than eliminate the exact source of evil it sought to remedy." *Id*.

The same is true here. The ordinance specifically states that it is intended to "improve aesthetics and preserve the quality of life in the Town by eliminating signage that is incompatible within individual Zoning Districts, as well as the Town character as a whole." (DE 28-1 at 43) It does exactly that by prohibiting all billboards throughout the Town. And although View suggests that the ordinance is not sufficiently narrowly tailored because a more limited ordinance — for example, one that bans billboards along only a certain stretch of the Route 30 and Route 41 corridor (DE 36 at 11) — would achieve the same purpose, the mere presence of plausible alternatives doesn't render an ordinance unconstitutional. Indeed, just because "[p]lausible public policy arguments might well be made in support of any such exception, [] it by no means follows that it is therefore constitutionally mandated, nor is it clear that some of the suggested exceptions would even be constitutionally permissible." *Members of the City Council of Los Angeles,* 466 U.S. at 815-16.

8

Finally, View contends that the fact that the Town granted a variance to Lamar means that the ordinance is underinclusive and therefore unconstitutional. While it is true that underinclusive ordinances are generally unconstitutional because they are not sufficiently narrowly tailored to meet their goals (*see Joelner v. Village of Washington Park, Illinois*, 508 F.3d 427, 433 (7th Cir. 2007)), a past application of the ordinance to Lamar simply isn't relevant in that determination. *Lavey v. City of Two Rivers*, 171 F.3d 1110, 1115 (7th Cir. 1999). Instead, what *is* relevant is the language and structure of the ordinance itself. *Id*. And this simply isn't a case of underinclusiveness like *City of Cincinnati v. Discovery Network* where the Court invalidated an ordinance purporting to improve aesthetics by eliminating 66 news racks containing handbills while allowing more than 1500 news racks containing newspapers to stand. 507 U.S. 410 (1993). In this case, the goal of the ordinance is to improve aesthetics by eliminating incompatible signage, and the Town achieved that goal by eliminating all billboards. There is nothing underinclusive about this total ban.

View makes much of the fact that its competitor (Lamar Advertising) got a variance from the Town while View did not. This is an equal protection argument in a case where equal protection isn't alleged. But suppose View had brought an equal protection claim. The claim would be a nonstarter. Recall that the Town only allowed the variance because Lamar agreed to tear down three other billboards in exchange for the variance. From an aesthetics point of view, this was a win for the Town; three grandfathered billboards came down while only one was erected. That is certainly a rational basis for treating Lamar differently from View.

9

*Due Process Claim* (*Count II*)

The 14th Amendment of the United States Constitution forbids the government from depriving "any person of life, liberty, or property, without due process of law." View claims the Town did exactly that when it failed to provide View with notice and an opportunity to be heard at the council meeting where its petition for variance was denied. The Town, however, claims that View received all the process it was due during the previous hearing before the BZA. I agree with the Town.

The basis for View's due process claim is a bit murky. View doesn't identify the 14th Amendment in its Complaint and instead appears to allege that because the BZA didn't follow its prescribed state law procedures in terms of providing View with notice of the Council's meeting, it failed to provide View with adequate process. (DE 1 at 6) That seems to be a state law claim, and generally speaking, federal courts are not the proper place to enforce state laws. *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 166-67 (7th Cir. 1994). ("Failure to implement state law violates that state law, not the Constitution; the remedy lies in state court."). Since this matter was initially filed in state court and removed to this Court, I could, of course, exercise supplemental jurisdiction over the state law claim, if one exists. *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 164-65 (1997). Yet the parties both frame this issue in their briefing as a due process claim under the 14th Amendment of the United States Constitution. So here's what I'll do: I'll rule on the federal claim the parties have briefed. Since I am dismissing all of the federal claims before me, any remaining state law claims will be remanded back to the Lake Superior Court, as discussed in greater

10

detail with respect to Count III.

As an initial matter, the parties appear to agree that View had a valid property interest in the billboard it sought to erect — or at minimum, this is a proposition the Town does not appear to dispute. But the law isn't entirely clear on this point. Although View alleges that it executed a contract with the landowner of the parcel at issue to erect a billboard (DE 35, Ex. 1 at ¶ 8), that may not be enough to confer a valid property interest — an issue that neither party raises. For example, in *Indiana Land Co. v. City of Greenwood*, the Seventh Circuit questioned whether a developer whose application to rezone property it had contracted to develop actually had a valid property interest, since "a contract to buy something is not tantamount to ownership of the thing." 378 F.3d 705, 709 (7th Cir. 2004). The court ultimately concluded that it did not need to resolve whether the plaintiff had an actual property interest that it could be deprived of because the court found there was no due process violation. *Id.* at 710; *see also Mid-American Waste Systems, Inc. v. City of Gary, IN*, 49 F.3d 286, 289-91 (7th Cir. 1995) (finding no due process violation where City cancelled lease for landfill site, but not explicitly holding whether a leasehold is a valid property interest). Similarly, because I find no due process violation in this case, I will set to the side the question of whether View has a valid property interest that could be deprived by the Town.

In determining whether there has been a due process violation here, my role is fairly limited as "federal courts are not boards of zoning appeals" and "the procedures 'due' in zoning cases are minimal." *River Park,* 23 F.3d at 166. Although there is some debate as to how much process is due in zoning cases – or, indeed, whether any process

11

is due at all – Seventh Circuit precedent leans towards affording some minimal amount of process to parties seeking zoning variances, versus affording no process at all. *See River Park*, 23 F.3d at 166; *see also Indiana Land Co.*, 378 F.3d at 710 (finding that zoning decisions made by a city council require no notice or hearing in general, but noting in dicta that some due process may be required for actions against a specific individual).

Generally speaking, the key components of due process are notice and an opportunity to be heard prior to being deprived of a property interest, with the opportunity to be heard being regarded as the "root requirement." *Cleveland Bd. of Ed. v. Loudermill, et* al., 470 U.S. 532, 542 (1985); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Courts evaluate three factors when determining whether a due process violation has occurred: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

In general, a party's interest in obtaining a zoning variance is low compared to the government's interest in regulating land use. *Compare River Park*, 23 F.3d at 167 (finding interest in a variance is low and therefore only minimal process is due) and *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 387 (1926) (finding government interest in land planning is significant). So the real question is whether the BZA's procedures risk an erroneous deprivation of property rights.

I don't think so. View was given notice and a robust opportunity to be heard at

12

the hearing before the BZA. Indeed, counsel for View took advantage of that opportunity by presenting extensive argument, evidence, and discussion with the BZA members. The Town Council then reviewed that evidence and approved the BZA's recommendation. This seemingly comports with the scant process due in zoning appeals.

The most on-point case I can find is the same one relied on by the parties – *City of Hobart Common Counsel v. Behavioral Institute of Indiana,* 785 N.E.2d 238 (Ind.Ct.App. 2003). Although this is a state court case dealing with the Indiana State Constitution and is, of course, not binding on the federal constitutional claim before me, I find its reasoning persuasive, particularly in the absence of anything more on-point from the Seventh Circuit.

In *Hobart*, the court held that a party requesting a zoning variance was denied due process where it had presented argument before the BZA, but had not been notified of the proceeding before the town council. What makes View's case different, though, is that the council in *Hobart* relied on evidence that had not previously been presented to the BZA. The court found, however, that if the council had not received and relied on the additional evidence, or, alternatively, had provided notice of that new evidence, its procedures would have provided adequate due process. *Id*. at 251. This was true even though the party would be presenting its arguments to only the recommending body and not the decision-maker.

That's exactly what happened here: Schererville's town council relied on the exact same evidence that was presented to the BZA in reaching its final decision. In a

13

nutshell, View had notice and an opportunity to be heard on the issues that ultimately led to the denial of its request for variance — and that's enough to satisfy the 14th Amendment's due process requirements.

In any event, let's suppose for a moment that the procedure used in this case was inadequate. View still has further post-deprivation remedies available to it that the Seventh Circuit has held are enough to meet the BZA and Council's due process obligations. *See e.g. River Park*, 23 F.3d at 167 (finding common law writ of certiorari is enough to supply due process in zoning law cases); *Easter House v. Felder*, 910 F.2d 1387, 1405 (7th Cir. 1990) (finding various state causes of action dealing with interference in contracts and business undertakings would provide meaningful post-deprivation remedies that satisfy due process). Specifically, pursuant to my remand, View is still free to pursue its remaining state law claims. In sum, View has gotten (or will get from the state court) all the process that it is due.

One final point: View makes a lot of the fact that the Town supposedly intentionally did not provide notice to it of the council's meeting and claims that this improper motivation creates a material fact question. I don't think that's right. While it may be true that a fact question exists – indeed, it appears there is one as I can find no admission in the record that the Town acted intentionally despite View's repeated claims that it did – a fact question must be *material* to preclude summary judgment. Not only has View provided no authority to support this bare assertion, but it hasn't actually even presented an argument as to why an intentional – as opposed to inadvertent – failure to notify View of the hearing impacts whether it received due

process. Even the "facts" it alleges come only from conclusory statements in an affidavit, which I am under no obligation to accept. *Celotex*, 477 U.S. at 324. Ultimately, since I've determined that View didn't need to be notified of the council's meeting since it had already had an opportunity to be heard and no new evidence was presented, much less relied upon, I don't see how the Town's motivation in not providing notice is relevant, let alone material.

*Abritrary/Capricious Claim (Count III)*

Finally, View argues that the Town's denial of its zoning variance request was arbitrary and capricious. While not entirely clear, this claim appears to challenge the substance of the BZA and Council's decisions. That's generally a state court's function, and although I could exercise supplemental jurisdiction here since this claim is based on the same "nucleus of operative fact" as the constitutional claims (*City of Chicago,* 522 U.S. at 164-65), I decline to do so since all of the federal claims have been dismissed, leaving only state law claims before me. 28 U.S.C. 1367(c)(3) (federal court may decline supplemental jurisdiction where only state law claims remain); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350-51 (1988) (when only state law claims remain, federal court has discretion to retain jurisdiction, remand, or dismiss). I therefore remand this claim, and any other remaining state law claim, back to my colleagues in the Lake Superior Court.

## Conclusion

For the above-stated reasons, Defendants' motion for summary judgment (DE 27) is **GRANTED-IN-PART**:

(1) Count I (First Amendment) of the Complaint (DE 1) is **DISMISSED**.

(2) Count II (due process) of the Complaint (DE 1) appears to include both a federal law claim and a state law claim. The federal Fourteenth Amendment due process claim is **DISMISSED**. Any remaining state law due process claim is **REMANDED** to the Lake Superior Court.

(3) Count III (arbitrary and capricious) of the Complaint (DE 1) is **REMANDED** to the Lake Superior Court.

The Clerk is directed to enter judgment in favor of the Defendants on the federal claims, including the First Amendment (Count I) and Fourteenth Amendment (Count II) claims.

    **SO ORDERED**.

ENTERED: January 22, 2015

    s/Philip P. Simon
    PHILIP P. SIMON, CHIEF JUDGE
    UNITED STATES DISTRICT COURT